# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George M. Marovich | Sitting Judge if Other than Assigned Judge | Michael T. Mason |
|---|---|---|---|
| **CASE NUMBER** | 02 C 2486 | **DATE** | 7/19/2002 |
| **CASE TITLE** | divine/Whittman-Hart, Inc. vs. Keith King et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Report and Recommendation** is hereby submitted to Judge Marovich recommending that Mukherjee's motion to dismiss for lack of personal jurisdiction be denied, Robinson's motion to dismiss for lack of venue be denied, Mukherjee, Sovereign and King's motion to dismiss for lack of venue but transfer the case to the Northern District of Georgia be granted and Robinson's motion to transfer to the Northern District of Georgia be granted. Specific written objections to this report and recommendations may be served and filed within 10 business days from the date this order is served. Fed.R.Civ.P. 72(a). Failure to file objection with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual and legal, made by this court in the report and recommendations. Lorentzen vs. Anderson Pest Control,64F.3d 372,330 (7th Cir. 1995.) All matters relating to the referral of this action having been completed, the referral is closed and the case is returned to the assigned judge. Enter Report and Recommendation.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | JUL 2 2 2002 | |
| | Notified counsel by telephone. | | date docketed | 51 |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | |
| | Mail AO 450 form. | 02 JUL 19 AM 10:47 | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 7/19/2002 | |
| | | FILED-ED 10 | date mailed notice | |
| KF | courtroom deputy's initials | | KF | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| divine/Whittman-Hart, Inc., an Illinois corporation,<br><br>Plaintiff,<br><br>v.<br><br>Keith King, Derrick Robinson, Joyendu Mukherjee and Sovereign Consultants, Inc.,<br><br>Defendants. | No. 02 C 2486<br><br>Judge George M. Marovich<br>Mag. Judge Michael T. Mason |

DOCKETED
JUL 2 2 2002

## REPORT AND RECOMMENDATION

The District Court has referred this case to this Court for a Report and Recommendation on defendants' motion to dismiss for lack of personal jurisdiction and for improper venue, or in the alternative to transfer venue to the Northern District of Georgia. For the following reasons, we respectfully recommend that the District Court deny the motion to dismiss for lack of personal jurisdiction, deny defendant Robinson's motion to dismiss for lack of venue, grant defendants Mukherjee, Sovereign and King's motion to dismiss for lack of venue but transfer the case to the Northern District of Georgia pursuant to 28 U.S.C. § 1406, and grant Robinson's motion to transfer to the Northern District of Georgia pursuant to 28 U.S.C. § 1404.

I. Facts

This diversity case grew out of an employment relationship between plaintiff, divine/Whittman-Hart, Inc. ("DWH") and defendants Keith King, Derrick Robinson, Joyendu Mukherjee and Sovereign Consultants Inc., (collectively referred to as "defendants"). DWH's complaint alleges that the individual defendants (and Sovereign,



where applicable) breached their duty of loyalty, breached their employment agreements, tortiously interfered with contracts and employees, and violated the Illinois Trade Secret Act.[1] On April 5, 2001, the plaintiff filed suit in the Northern District of Illinois; defendants soon after brought a motion to dismiss for lack of personal jurisdiction and improper venue, and in the alternative, moved to transfer venue to the Northern District of Georgia.

DWH is a corporation with its principal place of business in Illinois and branches throughout the country.[2] It implements computer software to help other companies connect with their customers and optimize their business structure. DWH hired King as a Senior Manager on February 14, 2000. When he was hired, King signed an Employment Agreement with DWH containing an Illinois choice-of-law provision. He also signed an acknowledgment form stating that he accepted employment with DWH and that DWH would have the rights of an employer. King performed the predominant amount of his work in St. Louis, Missouri, where he is a resident; he was interviewed and hired for the job in Missouri. King asserts that many of his meetings with clients and potential clients occurred in Atlanta, Georgia and that he had no direct contact with the Illinois office, except that his paychecks came from there as did those of Robinson and Mukherjee. King's work for DWH in Georgia involved working with minority-owned

---

[1] We accept all allegations of the complaint as true except where controverted by a defendant's affidavit. See Tellular Corp. v. Vitech America, Inc., No. 96-C-4749, 1996 U.S. Dist. LEXIS 15574, * 4 (N.D. Ill. Oct. 19, 1996). If the plaintiff then submits an affidavit, any conflict must be resolved in favor of the plaintiff. Id.

[2] DWH is incorporated in Delaware. It acquired an office called MarchFIRST in Atlanta, Georgia in April 2001.

businesses to assist them in obtaining information technology contracts from large corporations that have minority business contracting programs.

Robinson, a resident of Georgia, was interviewed and hired in June, 2001, in Georgia and worked for DWH in their Atlanta office as a Global Sales employee. When he was hired, his employment agreement contained not only an Illinois choice of law provision, but also a forum selection clause consenting to jurisdiction and venue in the Northern District of Illinois. The employee agreement also contained a non-solicitation of customers and employees clause and a non-disclosure of confidential information clause. Robinson's 'territory' for DWH included Georgia, Florida, North Carolina, South Carolina, Virginia and Alabama. Robinson worked in these states as well as Texas where he met with clients and potential clients. In November, 2001, Robinson traveled to Illinois for a sales meeting with DWH.

Mukherjee, a Georgia resident, was interviewed and hired in Georgia on July 26, 1999 to be a senior manager. Mukherjee also signed an agreement that was similar to King's. It contained an Illinois choice-of-law provision but no venue or forum selection clause. He was associated with a practice group in Denver, Colorado but worked out of Georgia and often traveled with his team to New Jersey, Michigan, Florida and Texas; he traveled to Illinois on three occasions for DWH business.

All three defendants worked together on various DWH projects, and plaintiff alleges in its complaint that the three, while still working for DWH, conspired to form a Florida-based company called Sovereign which utilized DWH's confidential information to compete with DWH. For example, at the direction of DWH, the defendants worked on a project for Sophisticated Systems Inc. ("SSI"), an Ohio corporation that is similar to

3

DWH; plaintiff alleges that defendants used this contact to help further Sovereign's business. Plaintiff also alleges that Robinson and Mukherjee met with Dwight Smith – the president and CEO of SSI – in Georgia, and asked him to work with Sovereign in competition with DWH. Further, the defendants solicited business in Florida through BayForce Staffing Solutions. A great deal of these contacts were made in Georgia, as were the plans for creating and running Sovereign.

Through Sovereign, King accepted a job on October 15, 2001 with a client called BayForce, a Florida Corporation, not telling BayForce that he was employed by DWH. While working for BayForce from October, 2001 until March 1, 2002, King performed no work on behalf of DWH, however, he did perform Sovereign work for Southern Wine, another Florida corporation which was a potential client of DWH.

While still employed by DWH, Mukherjee and Robinson traveled to Michigan, Ohio and Texas to solicit business for Sovereign from Chrysler, Kroger Co. and Marathon Oil, respectively; he also solicited Sovereign business in Georgia. In February 2002, Robinson and Mukherjee began demanding kickbacks for deals that they created between SSI and DWH and in March 2002, they told SSI executives that they had established a partnership with five other people in Florida outside of DWH. The defendants learned of their potential clients for Sovereign through their employment at DWH. Some of the potential clients were located in Georgia.

While still employed by DWH, in October 2001, Mukherjee and Robinson solicited DWH employee Kulwinder Bhoombla to work for them on behalf of Sovereign. In November, 2001, Mukherjee contacted Dipul Achuri, a DWH employee, about also working for Sovereign.

4

The documents needed for litigation are located across the country, including Illinois, Colorado, Missouri, Ohio, Michigan, Florida, Tennessee, and Texas. The payroll information, which is needed to assess damages, are in Illinois, as are many of the documents regarding DWH's current and potential clients. There are many companies and representatives of those companies situated throughout the country, and many meetings with these people took place throughout the country as well.

II. Analysis

In order for this Court to have jurisdiction and venue over this case, we need to analyze various aspects of the parties' contacts with Illinois, the situs of relevant events, and other factors related to convenience.

Defendants claim that they did not have enough contact with Illinois to give rise to personal jurisdiction and venue there, and that even if they did, this case should be transferred to the Northern District of Georgia. Plaintiff in turn claims that the case is not centered in Georgia or Illinois, but all over the country, and that it should be heard in the Northern District of Illinois. Plaintiff asserts that because the goal of the defendants was to compete with DWH, an Illinois company, the damaging effect of defendants' actions was felt in Illinois, giving rise to jurisdiction. Further, plaintiff relies on the choice-of-law and forum clauses and the convenience of the parties to show that this case should remain in the Northern District of Illinois, where it initially filed suit.

III. Personal Jurisdiction

The burden to establish personal jurisdiction lies with the plaintiff. *See Steel Warehouse of Wisc. Inc. v. Leach*, 154 F.3d 712, 714 (7th Cir. 1998). The Northern District of Illinois has jurisdiction over non-resident defendants if the state courts of

5

Illinois would have such jurisdiction. *Jamilk v. Days Inn of Mount Laurel*, 74 F.Supp.2d 818, 820 (N.D.Ill. 1999). The Illinois long-arm statute allows courts to exercise jurisdiction to the fullest extent consistent with due process under the state and federal constitution. 735 ILCS 5/2-209(c); *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997); *Rollins v. Elwood*, 565 N.E.2d 1302, 1306 (Ill. App. 1990). "If jurisdiction is improper under either the United States or Illinois Constitution, the court cannot exercise jurisdiction over the non-resident party." *RAR*, 107 F.3d at 1276.

### A. State Due Process

The Illinois Due Process Clause allows jurisdiction "when it is fair, just, and reasonable to require a non-resident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which *affect interests located in Illinois*." *Rollins* 565 N.E.2d 1302, 1316 (Ill. 1990)(emphasis added). Because there is little case law regarding the Illinois Due Process Clause, courts turn to the Federal Due Process Clause for jurisdiction and rarely differentiate between the two clauses. See *R.A.R.* 107 F.3d at 1277; see *Lawson v. Tax Lien Resources Group, LLC*, No. 98 C 245, 1998 U.S. Dist. LEXIS 21533, *9 (N.D. Ill. Dec. 23, 1998).

The defendants cite *Weiden v. Beneveniste*, 699 N.E.2d 151 (Ill. App. 1998), for the proposition that an effect in Illinois is not enough to give rise to personal jurisdiction. While this will be discussed more in depth under the Federal Due Process Clause section below, we note that the discussion in *Weiden* of the state due process clause is consistent with the rules of federal due process. 699 N.E.2d at 153-54. *Weiden* holds that when a defendant has no contact with Illinois and has no warning or reason to

believe that based on her conduct she could be held to answer for her actions in Illinois, then the Illinois Constitution would bar jurisdiction over her. *Id.*

The present situation is readily distinguishable from *Weiden* as the defendants here should have been aware that they could be called to answer for their actions in Illinois. One of the three defendants signed a jurisdiction and venue waiver for Illinois and all three signed an Illinois choice-of-law provision. Further, they all knew that DWH has its primary place of business in Illinois, they received their paychecks from Illinois, and knew that Sovereign would be competing with an Illinois company.

### B. Federal Due Process

Federal due process requires that for a court to properly exercise personal jurisdiction over a defendant, (1) the defendant must have "minimum contacts" with the forum state, and (2) the exercise of jurisdiction must not violate "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 108-13 (1987); *See International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The defendant's actions upon which jurisdiction is based must be such that the defendant would reasonably expect to be haled into court in that jurisdiction. *World-Wide Volkswagen Corp. v. Woodson* 444 U.S. 286, 87 (1980). Therefore, the defendant's conduct cannot merely be "random, fortuitous, or attenuated." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 72 (1985).

#### 1. Minimum contacts

To have minimum contacts, the "defendant's activities must be of such a quality and nature that it would reasonably anticipate being haled into court there. *World-Wide*, 444 U.S. at 297. "One who commits tortious acts against an Illinois business should

7

reasonably anticipate being haled into court there," *Tellular Corp.*, 1996 U.S. Dist. LEXIS 15574 at *5-6, even if the actual tort was committed outside Illinois. *Janmark Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997). This is such because a "wrong does not become a 'tort' until an injury has occurred (speeding is wrongful, but not tortious, if no one is injured), and the location of the injury therefore is vital to understanding where the tort occurred." *Janmark*, 132 F.3d at 1202.[3]

In *Janmark*, there were two sellers of mini shopping carts, Janmark from Illinois, and Dreamkeeper from California. 132 F.3d at 1202. Janmark alleged that Dreamkeeper threatened one of Janmark's customers in New Jersey to try to stop the customer from buying carts from Janmark. *Id.* While Dreamkeeper had no direct contact with Illinois, the Seventh Circuit found that the economic injury in Illinois was enough to create a minimum contact. *Id.*

The defendants try to distinguish *Janmark* from the present situation by arguing that because the defendant in *Janmark* was a nation-wide business and the defendants in this case are private individuals, there should be a different outcome, however, the fact that the defendants were a nationwide company was not the foundation of the case.[4] Mukherjee cites to *Lifeway Foods, Inc. v. Fresh Made Inc.*, 940 F.Supp. 1316 (N.D.Ill. 1996), to support the idea that an injury in a particular state is not enough to

---

[3] While the *Janmark* case has been highly criticized by other Circuit Courts and the defendants therefore ask us to disregard its holding, the decision is still binding on this court and we must follow it. *See e.g. I.M.O. Indus. Inc. v. Kiekert AG*, 155 F.3d 254 (3rd Cir 1998); *Noonan v. Winston Co.*, 135 F.3d 85 (1st Cir. 1998); *ESAB Group, Inc. v. Cenricut*, 126 F.3d 617 4th Cir. 1997).

[4] The defendants also try to distinguish *Janmark* by stating that in the instant case, the plaintiff did not identify a specific injury, however we find that it has stated an injury to its business and any more specificity is not required at this time.

8

confer jurisdiction. However, the case is a from a district court and was decided before *Janmark* – which clearly held to the contrary.

Further, in *Digital Merchant Sys. v. Oglesby*, three employees of an Illinois company caused an injury within Illinois when they violated their employment agreements by recruiting plaintiff's employees. 98-C-8003, 1999 U.S. Dist. LEXIS 18824, at *1-3, 7 (N.D. Ill. Nov. 30, 1999). Although the vast majority of the tortious activities occurred outside Illinois, the defendants "knew they were dealing with an Illinois Corporation" and caused an injury there giving minimum contacts in Illinois. *Id.* at * 3-4.

There are minimum contacts in this case because the defendants knew that their alleged actions would cause an economic injury to an Illinois company by competing with it for employees and clients, in violation of defendant's DWH employment agreements.

Finally, although Robinson and Mukherjee traveled to Illinois for business, DWH does not allege that they caused damages to the plaintiff on those trips. Therefore, those travels are protected by the fiduciary shield doctrine, "which insulates a person from jurisdiction in a state when the individual's contacts with the state came about solely because the individual was acting to further the interests of an employer or other principal." *Tellular Corp. v. Vitech Maerica, Inc.*, No. 96 C 4749 1996 U.S. Dist. LEXIS 15574, *9 (N.D. Ill. Oct. 19, 1996)(citing *Rollins v. Ellwood*, 565 N.E.2d 1302, 1313-18 (Ill. 1990)).

### 2. Fair Play and Substantial Justice

If minimum contacts are found in Illinois, we may evaluate the burden on the defendant, the interest of Illinois in adjudicating the dispute, and the plaintiff's interest in obtaining convenient and effective relief.[5] *International Shoe*, 326 U.S. at 320; *World Wide*, 444 U.S. at 292.

Finding jurisdiction over the defendants in the Northern District of Illinois does comport with fair play and substantial justice. While there is a burden on the defendants to have to come to Illinois to defend themselves, it is not so great – especially with today's technology – to justify dismissing this case for lack of jurisdiction. Further, Illinois has an interest in protecting companies within Illinois and deciding its own law. There is no evidence that the defendants cannot receive a fair and efficient trial in the Northern District of Illinois.[6]

### IV. Lack of Venue

Pursuant to 28 U.S.C. § 1406, if a case is filed in a district that lacks venue, the court there must dismiss the case, or, if the interests of justice so require, transfer it to a proper venue. Further, in cases where venue is proper, 28 U.S.C. § 1404 allows a court to "transfer a civil action for the convenience of the parties and witnesses [and] in the interests of justice ... to any other district or division where it might have been brought." According to 28 U.S.C. § 1391(a), venue is proper in:

> (1) A judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the

---

[5] Many of these issues will be discussed in more depth in the venue analysis.
[6] The plaintiffs provided us with a "Judicial Caseload Profile" for both the Northern District of Illinois and the Northern District of Georgia showing that a trial in Georgia will not be substantially faster than in Illinois.

events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

Neither party argues that either of the first two venue options apply in this case; a substantial part of the events did not occur in Illinois, and the three defendants do not live in the same state. However, the plaintiffs argue that Illinois is proper because the defendants are subject to jurisdiction here and there is no one jurisdiction where a substantial part of the events occurred, while defendants contend that a substantial part of the events occurred in Georgia, making venue proper there, but not in Illinois, under 28 U.S.C. 1391(a)(2).

We agree with the defendants that a substantial portion of the relevant events in this case did take place in Georgia. "The test is not whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." *TruServ Corp. v. Neff*, 6 F.Supp.2d 790, 92 (N.D. Ill. 1998).

Georgia is home to a substantial portion of the events in this case because the defendants met with many of their clients in Georgia, and that is where they had most of their discussions relating to Sovereign. In fact, two of the defendants did most of their Sovereign work from their home offices in Georgia. Because Georgia is the situs of a substantial part of the activity related to this case, Illinois cannot have jurisdiction pursuant to 28 U.S.C. § 1391(a)(3), and DWH's argument that Illinois has venue only because it is not proper anywhere else must fail. Since Georgia does have venue

pursuant to §1391(a)(2), we must either transfer King's, Mukherjee's and Sovereign's cases to Georgia in the interest of justice or dismiss them outright. 28 U.S.C. § 1406.[7]

We believe it is proper to transfer King's, Mukherjee's and Sovereign's cases to the Northern District of Georgia in the interests of justice. As we explain below, Robinson is subject to venue in Illinois and thus his case cannot be dismissed. It is not fair to order him to stand as the only defendant in a case in which all of the defendants are equally accused. Thus, the interests of justice require that we transfer King, Mukherjee and Sovereign to Georgia to stand trial. Robinson's case will also be transferred there pursuant to 28 U.S.C. §1404(a).

V. Request for Transfer to the Northern District of Georgia by Robinson

Defendant Robinson asks this court to transfer his case to the Northern District of Georgia pursuant to 28 U.S.C. § 1404(a). In order to determine if such a transfer is proper, we must weigh the public and the private interests of the parties to the litigation, Sanders v. Franklin, 25 F.Supp.2d. 855, 857 (N.D.Ill. 1998), and the defendant has the burden to demonstrate that Georgia is "clearly more convenient." Coffee v. Van Dorn Iron Works, 796 F.2d 217, 220 (7th Cir. 1986).

We have discretion to transfer this case pursuant to § 1404(a) if: "(1) venue was proper in the transferor court; (2) venue and jurisdiction would be proper in the transferee district; and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice." Sanders, 25 F.Supp.2d at 857.

---

[7] This Court does have venue over Robinson, since his employment agreement contained a waiver of venue clause.

12

The plaintiff claims that Robinson does not meet the second prong of § 1404(a) because he signed a forum selection clause agreeing that Illinois has jurisdiction and venue.[8] These clauses do not preclude courts from transferring cases to another forum outright, however a party who agreed to such a clause may be barred from asserting his own inconvenience as a reason to transfer the case. *Newcourt Linc Financial, Inc. v. Allwire, Inc.*, No. 96 C 5601, 1997 U.S. Dist. LEXIS 2928, *8 (N.D. Ill. March 14, 1997). Courts must still consider the interests of justice and the convenience of the witnesses, which are grounds to transfer separate from those of the defendant's inconvenience. *Florsheim Group, Inc. v. Vila*, No. 01 C 3334 2001 U.S. Dist. LEXIS 3334, *5 (N.D. Ill. Oct. 19, 2001). It is clearly more convenient for the witnesses to have the trial in Georgia, and the interests of justice are fully supported by transferring the trial there; having a trial in Illinois for Robinson and a trial in Georgia for the remaining defendants goes against all interests of justice and judicial economy.

The convenience/interests of justice prong of the analysis is broken into two subsets: (1) private interest factors, and (2) public interest factors. The private interest analysis examines the convenience for the parties and the witnesses, while the public interest analysis evaluates whether the transfer will serve the interests of justice. *Clearclad Coating, Inc.*, 1999 U.S. Dist. LEXIS 1317, at *23-26.

A. Private Interest Factors

There are four private interest factors that must be weighed: (1) the plaintiff's choice of forum, (2) the situs of the material events and documents/evidence, (3)

---

[8] The plaintiff admits that but for the waiver jurisdiction would be appropriate in Georgia, however many districts can have jurisdiction regardless of the clause if justice so requires. *Midwhey*, 883 F.2d 1286, 1293 (7th Cir. 1989).

13

convenience of the witnesses, and (4) convenience to the parties. *Hanley v. Omarc, Inc.*, 6 F.Supp.2d 770, 75 (N.D. Ill. 1998). The balance favors transfer to Georgia.

### 1. The Plaintiff's Choice of Forum

Generally, "the plaintiff's choice of forum is entitled to substantial weight, especially if it is the plaintiff's home forum." *Clearclad Coating, Inc.*, 1999 U.S. Dist. LEXIS, at 26-28. However, because Robinson lacks any significant contact with Illinois for the underlying action, this factor is entitled to less deference. *Digital Merchant Systems*, 1999 U.S. Dist. LEXIS 18824, at *20.

### 2. The Situs of the Material Events and Documents/Evidence

While the situs of the events is located throughout the country, a substantial portion of the action took place in Georgia, tipping the scale in the direction of a transfer. The situs is clearly not in Illinois.

The documents and evidence needed for litigation are spread throughout the country. The records of DWH are in Illinois and the records of Sovereign are in Georgia and Florida. Further, many documents of the companies that the defendants worked with are in Georgia. However, because of modern technology and the wide-spread use of computers and fax machines, "moving information from one place to another does not create the onerous burden it once may have." *Clearclad Coatings, Inc.*, 1999 U.S. Dist. LEXIS 13173, at *29. Even having to move boxes of documents is not a sufficient reason to transfer a case. Id. This factor does not weigh for or against either party.

### 3. Convenience to the Witnesses

Convenience to the witnesses is often the deciding factor in a §1404(a) analysis. *Brandon Apparel Group, Inc. v. Quitman Mfg. Co.*, 42 F.Supp.2d 821, 834 (N.D. Ill.

1999). Courts must consider not only the number of witnesses, but the quality of their testimony as well. *United Air Lines, Inc.*, 8 F.Supp.2d at 799. Further, it is presumed that the parties, especially the plaintiff, who brought the action, can assure the testimony of their employees, so convenience to those witnesses are not given great weight in this balance. *Id.*

The plaintiff plans to call fourteen witnesses and Robinson plans to call five (not including the other individual defendants and Mukherjee's witnesses). Of plaintiff's fourteen witnesses, seven are not employees of DWH and are located in Michigan (one witness), Florida (three witnesses) and Ohio (three witnesses). Whether this trial is in Illinois or Georgia, they will still have to travel outside the district where they reside.

Robinson's witnesses all reside in Georgia and would have to travel to Illinois for a trial. Since many of the plaintiff's witnesses will have to travel no matter where the trial is, but Robinson's witnesses will have to travel only if this case is held in Illinois, this factor weighs in favor of Robinson.

### 4. Convenience to the Parties

As discussed above, Robinson has waived any argument he may have regarding his own convenience by signing the waiver. This factor therefore weighs in favor of the plaintiff.

Considering the plaintiff's choice of forum, which slightly favors the plaintiff, the situs of the events and evidence, which is neutral, the convenience of the witnesses (the heaviest factor), which favors the transfer, and finally the convenience of the plaintiff, we find that the balance overall favors transferring this case to Georgia, although not overwhelmingly.

B. Public Interest Factors: Interests of Justice

Regardless of the outcome of the private interest factors, the public interest factors favor transferring this case to Georgia so that they greatly outweigh any argument plaintiff may have for keeping the case in Illinois. Whether a transfer is in the interest of justice involves an analysis of four factors: (1) relation of the locale to the controversy; (2) the court's familiarity with the applicable law; (3) the speed of litigation; and (4) where consolidation of the cases is possible. *Clearclad*, 1999 U.S. Dist. LEXIS 13173, at *33; *Coffey*, 796 F.2d at 221. These factors generally relate to the efficient administration of the court system. *Coffey*, 796 F.2d at 220.

1. The Relation of the Locale to the Controversy

While Illinois is not the situs for a substantial amount of the activity at issue in this case, it does have an interest in remedying the harm of its residents. *Florsheim Group, Inc. v. Vila*, No. 01 C 3334, 2001 U.S. Dist. LEXIS 17106, *11 (N.D. Ill. Oct. 19, 2001). This factor weighs against transferring the case to Georgia.

2. Familiarity with the Applicable Law

There is no disagreement among the parties that the proper law to be applied is Illinois state law. While it is undisputed that an Illinois court is better suited to decide issue of Illinois law, this does not significantly tip the scale as courts are often presented with cases involving foreign state laws. *See D'Ancona & Pflaum LLC. v. M2 Software, Inc.*, No. 00 C 7150 2001 U.S. Dist. LEXIS 11375, * 7-8 (N.D. Ill. Aug. 6, 2001).

### 3. Speed of Litigation

The plaintiff provided this court with Federal Court Management Statistics which show that there is not a significant difference in the speed of litigation between the two districts, so we agree with the plaintiffs that this factor does not favor either party.

### 4. Consolidation of the Case

Keeping all of the defendants together in one trial is greatly preferred, presumably by all parties, and definitely by the court system. If we were to decide not to transfer Robinson's case to Georgia, then there would be two almost identical trials taking place simultaneously, one in Georgia against Mukherjee, Sovereign and King, and one in Illinois against Robinson. This scenario is against all notions of judicial economy, so this factor weighs heavily in favor of transferring this case to the Northern District of Georgia, and in fact acts as the deciding factor.

Balancing all of the public interest factors, combined with the private interest factors, we recommend that the District Court transfer this case in its entirety to the Northern District of Georgia.[9]

Specific objections to this report and recommendation may be served and filed within 10 business days from the date that this order is served. Fed. R. Civ. P. 72(a). Failure to file objections with the District Court within the specified time will result in a waiver of the right to appeal all findings, factual or legal, made by this Court in the report

---

[9] Robinson, in his reply brief argues that this case should be dismissed because his "salary and compensation for the period in question would be significantly less than the $75,000 required by" the federal courts. However, it is not his salary and compensation that is at issue, but the damages to the plaintiff, and there is no indication that they cannot meet the $75,000 requirement for diversity jurisdiction.

and recommendation. *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

ENTER:

*[signature]*

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated:   July 19, 2002**